Case No. 2022-2078

# BEFORE THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

UNITED STATES STEEL CORPORATION,

*Plaintiff-Appellant*

NUCOR CORPORATION,

*Plaintiff*

v.

UNITED STATES,

*Defendant*

BLUESCOPE STEEL (AIS) PTY LTD., BLUESCOPE STEEL LTD., BLUESCOPE STEEL AMERICAS, INC.,

*Defendants-Appellees*

Appeal from the United States Court of International Trade in
Case No. 20-3815
Judge Richard K. Eaton

NONCONFIDENTIAL REPLY BRIEF OF PLAINTIFF-APPELLANT
UNITED STATES STEEL CORPORATION

Thomas M. Beline
Yohai Baisburd
Sarah E. Shulman
CASSIDY LEVY KENT (USA) LLP
900 19th Street N.W., Suite 400
Washington, DC 20006
Phone: (202) 567-2300
Fax: (202) 567-2301

*Counsel to United States Steel
Corporation*

Dated: February 17, 2023

**FORM 9. Certificate of Interest**

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---:|---|
| **Case Number** | 2022-2078 |
| **Short Case Caption** | United States Steel Corporation v. US |
| **Filing Party/Entity** | United States Steel Corporation |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/17/2023

Signature: /s/ Sarah E. Shulman

Name: Sarah E. Shulman

FORM 9. Certificate of Interest

Form 9 (p. 2)
July 2020

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| United States Steel Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☑   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable          ☑   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**Attachment to Certificate of Interest of United States Steel Corporation**

**CAFC Ct. No. 2022-2078**

***United States Steel Corporation v. US***

The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency, or expected to appear in this court are:

*Appearing before this Court*:   **Cassidy Levy Kent (USA) LLP**
Thomas M. Beline, Partner
Yohai Baisburd, Partner
Sarah E. Shulman, Counsel
James E. Ransdell, Counsel
Chase J. Dunn, Associate

*Before trial court*:   **Cassidy Levy Kent (USA) LLP**
Thomas M. Beline, Partner
Yohai Baisburd, Partner
Sarah E. Shulman, Counsel
James E. Ransdell, Counsel
Chase J. Dunn, Associate

The case titles, trial court case numbers, and trial court judge of all cases known to be pending in any court that will directly be affected by this court's decision in the pending appeal are:

United States Steel Corporation v. United States
U.S. Court of International Trade Ct. No. 21-00528
Judge Richard K. Eaton

# **Table of Contents**

Page

I.  Argument ..................................................................................1

A.  Neither Response Brief Demonstrates that Deduction of Anti-Dumping Duties from a Transfer Price Did Not Reimburse Those Duties  .......................................................................1

   1.  The Response Briefs Wrongly Assert that the Supply Agreement Does Not Apply to BlueScope's Transfer Price; It Does  .........................................................1

   2.  The Response Briefs Incorrectly Apply Customs Rules ......................4

   3.  Payment of Duties Is a Distraction from BlueScope's Reimbursement ....................................................8

B.  Commerce and BlueScope Misconstrue the Reimbursement Regulation and Related Precedent in an Attempt to Justify Commerce's Failure to Apply its Reimbursement Regulation to the Record Evidence ..........................................................10

   1.  The Policies Commerce and BlueScope Advance For the First Time on Appeal are Flawed and Find No Basis in the Regulation or Prior Precedent ..........................................10

   2.  Tellingly, Neither Commerce nor BlueScope Can Identify Commerce's Reversal of its Interpretation of the Reimbursement Regulation ..............................................14

II.  Conclusion ..............................................................................17

# **Confidential Material Omitted**

Pursuant to Federal Circuit Rule 25.1(e)(1)(B), Appellant has prepared a nonconfidential version of its brief from which it has redacted certain confidential information. Confidential information has been removed from pages 3-6 of the brief. This confidential information relates to details of Defendant-Appellees' pricing calculation that was treated as proprietary in the underlying investigation.

i

NONCONFIDENTIAL VERSION

## <u>Table of Authorities</u>

Page(s)

<u>Regulations</u>

19 CFR § 351.402(f) ...................................................................... 8, 11-12

<u>Court Decisions</u>

*Abbott Labs. v. United States*, 573 F.3d 1327 (Fed. Cir. 2009)........................ 10-11

*Apex Exps. v. United States*, 777 F.3d 1373 (Fed. Cir. 2015) .............................. 7-8

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988).......................................10

*NMB Sing. Ltd v. United States*, 557 F.3d 1316 (Fed. Cir. 2009) ..........................16

*Shandong Huarong Mach. Co. v. United States*, 435 F. Supp. 2d 1261 (Ct. Int'l Trade 2006)................................................................ 14-15

*Torrington Co. v. United States*, 881 F. Supp. 622 (Ct. Int'l Trade 1995) ............................................................................................ 11-12

<u>Administrative Determinations</u>

*Certain Frozen Warmwater Shrimp from India: Final Results of Antidumping Duty Administrative Review and Final No Shipment Determination*, 77 Fed. Reg. 40,848 (July 11, 2012) ........................................ 15-16

*Large Diameter Welded Pipe from Canada: Preliminary Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2020*, 87 Fed. Reg. 6,497 (Feb. 4, 2022) ................................................................................. 15-16

*Porcelain-on-Steel Cookware from Mexico: Final Results of Antidumping Duty Administrative Review*, 65 Fed. Reg. 30,068 (May 10, 2000)...........................................................................................9

NONCONFIDENTIAL VERSION

<u>Other Administrative Materials</u>

Headquarters Ruling Letter (HQ) H301048, "Request for Internal
Advice Regarding Deductions from Entered Value of Softwood
Lumber; Countervailing Duties; Anti-Dumping Duties," dated
May 26, 2021 ("HQ H301048") ................................................................5

NONCONFIDENTIAL VERSION

This reply brief is submitted on behalf of United States Steel Corporation ("U. S. Steel") in response to the briefs submitted by Appellees United States ("Commerce") and BlueScope Steel (AIS) Pty Ltd., BlueScope Steel Ltd, and BlueScope Steel Americas, Inc. (collectively, "BlueScope") regarding BlueScope's reimbursement of antidumping duties to its affiliated importer, BlueScope Steel Americas ("BSA"). Boiled down to its essence, BlueScope deducted antidumping duty deposits when setting the invoice price to its affiliated importer BSA. That deduction created reimbursement. Commerce's failure to acknowledge the reimbursement is not based on substantial evidence and is not in accordance with law.

## I.    ARGUMENT

### A.    Neither Response Brief Demonstrates that the Deduction of Anti-Dumping Duties from a Transfer Price Did Not Reimburse Those Duties

#### 1.    The Response Briefs Wrongly Assert that the Supply Agreement Does Not Apply to BlueScope's Transfer Price; It Does

The primary contention set out by the response briefs of both Commerce and BlueScope is that the pricing terms of the supply agreement do not apply to the sale between producer and importer and as such, BlueScope was not obligated to charge its importer the full, duty-inclusive, hot-rolled steel price. *See* "Response Brief of Defendant-Appellee United States" CAFC ECF No. 35-36 (Jan. 27, 2023) ("Commerce Br.") at 18-19 ("as set forth above, the supply agreement is *silent* as

1

NONCONFIDENTIAL VERSION

to the transfer price charged BSA by AIS; rather, the supply agreement simply, and logically, provides that Steelscape will pay a duty-inclusive price."); *id*. at 21 ("suffer from the same base misunderstanding, implying that AIS should have charged 'its importer' the 'formula price,' *i.e.*, the formula in the supply agreement setting prices to *Steelscape*."); "Response Brief of Defendant-Appellees BlueScope Steel (AIS) Pty Ltd., BlueScope Steel Ltd, and BlueScope Steel Americas, Inc." CAFC ECF No. 33-34 (Jan. 25, 2023) ("BlueScope Br.") at 9 ("nothing in the Substrate Supply Agreement sets forth the invoice price that foreign producer AIS is to charge its related party importer BSA for the merchandise."); *id*. at 16 ("This entire argument, however, comes from a false premise; namely, that the Steelscape Substrate Supply Agreement somehow establishes that 'the importer is to be invoiced a formula price for HRS.'").

The record directly contradicts Commerce's and BlueScope's current, *post hoc*, position that the pricing terms of the supply agreement did not apply to the transfer price. The record contains two documents that confirm the applicability of BlueScope's supply agreement to its sale of hot-rolled steel to its affiliated importer.

The first document is the substrate supply agreement. In response to Commerce's request that BlueScope "explain how you determined the net unit transfer price" BlueScope provided a supply agreement stating, "{t}he price of

material sold by BlueScope to BSA and subsequently to Steelscape is based on [

pricing description                    ].” BlueScope Steel’s Section A Questionnaire

Response (Feb. 11, 2019) (“BlueScope Sec. A”) at 43, Appx0114;[1] BlueScope’s

Response to the Department’s 1st Supplemental Section A Questionnaire (Apr. 8,

2019) (“BlueScope 1st Supp. AQR”) at Exhibit SA-11, Appx2078.  The second

document is BlueScope’s worksheet that “demonstrates the application of the

transfer price formula” to BSA’s invoice price. BlueScope 1st Supp. AQR at 28,

Exhibit SA-12, Appx1458, 2110, 2112.

　　　　BlueScope consistently described the terms of its transfer price as delivered

duty paid (“DDP”), confirming it must be a duty inclusive price:

> These worksheets show that the [ pricing terms
> 　　　　　　　　] does not include freight or commission.
> However, that is NOT the transfer price to BSA. The
> worksheets show that after the [
> 　　　　pricing calculation
> 　　　　　　　　] to achieve the ‘price to BlueScope Steel
> Americas.’  . . . The transfer price then, is clearly a
> [ terms ] price, as set forth in the pricing agreement.

BlueScope’s Response to the Department’s Post-Preliminary Supplemental

Questionnaire (Feb. 18, 2020) (emphasis supplied) (“BlueScope Post-Prelim”) at 4,

Appx3156.  Thus, the record directly undermines Commerce’s *post hoc* attempt to

justify its non-reimbursement finding.  Commerce Br. at 22 (“BlueScope explained

---

[1] All citations are to the confidential record Joint Appendix.

CONFIDENTIAL INFORMATION OMITTED

how it calculated its transfer price to BSA, explaining that it deducts estimated

duties.").

   2.   The Response Briefs Incorrectly Apply Customs Rules

Commerce and BlueScope misapply the Customs rule allowing duties to be

treated as a non-dutiable charge when reporting entered value to BlueScope's

transfer price calculation. Commerce Br. at 16; BlueScope Br. at 21, 23-24 ("to

comply with the definition of 'entered' value as that term is defined by Customs . .

. BSA had to begin its calculation with the formula price, a DDP price, and deduct

all freight and duties to reach an entered value.").

The transfer price is the amount invoiced to the importer. The entered value

is the amount declared to Customs for assessment purposes. The transfer price and

entered value are not identical and need not be. *See* BlueScope Post-Prelim at 6,

Appx3158 ("It is important to distinguish between the transfer price and the

entered value, because the two are not the same."). BlueScope confirms that it

deducted duties when establishing the transfer price to its importer. BlueScope 1st

Supp. AQR at Exhibit SA-12, Appx2110, 2112 (showing [         calculation

      ]); BlueScope Post-Prelim at Exhibit SA2-3, Appx 3340 (entry summary

showing BlueScope's entered value [       calculation                  ]).

Customs' guidance requires the duty to have been included in the price

invoiced to the importer (*i.e.*, transfer price) for the importer to calculate entered

4

value by deducting duties. Headquarters Ruling Letter (HQ) H301048, "Request for Internal Advice Regarding Deductions from Entered Value of Softwood Lumber; Countervailing Duties; Anti-Dumping Duties," dated May 26, 2021 ("HQ H301048") at 8 ("ADD/CVD are allowed to be deducted from the invoice value at the time of entry . . . if they are part of the invoice amount."); *id*. at 9 ("the importer of record is still required to follow the cited regulations and identify the non-dutiable charges within the invoice price, including duties in the case of a DDP transaction"). In other words, BlueScope's transfer price/invoice value should have included the duties, and BSA could have deducted the antidumping duties from the invoice value to arrive at a Customs-compliant entered value.

BlueScope reported an entered value that had been lowered by estimated duties. Customs rules dictate that those duties should have been "part of the invoice amount." *Id*. at 8. They were not. *See* Final Analysis Memorandum ("Final Analysis Memo") at 4, Appx4103("[

      calculation


                 ]"); BlueScope 1st Supp. AQR at Exhibit SA-12, Appx2110, 2112 (Calculating BSA's invoice price by [  calculation

]); *see also* Commerce Br. at 12 ("BlueScope explained how the transfer price is set, including that the Australian entity deducts the costs of antidumping

duties"); *id*. at 22 ("BlueScope explained how it calculated its transfer price to

BSA, explaining that it deducts estimated duties"); BlueScope Br. at 21 ("The

record shows, of course, that exporter AIS did not charge importer BSA for the

antidumping duties").[2]

　　　　BlueScope understood Customs' rules, it simply chose to reimburse its

importer instead.  BlueScope even attempted to correct Commerce's understanding

of how BlueScope was required to calculate transfer price in accordance with

Customs practice:

> it is important to make clear that the Department's
> predicate is not correct when it states that "BlueScope
> [　calculation　　　　　　　　　　　　] to arrive at its
> transfer price to BSA. As explained in answer to the
> preceding question, [
> 　　calculation
> 　　　　　　　　].

BlueScope Post-Prelim at 5, Appx3157.  To be sure, BlueScope correctly

described this practice.  But instead of invoicing its importer a transfer price

consistent with the Customs' practice BlueScope described above, BlueScope did

not charge its importer a transfer price that included the duties.  Commerce fails to

---

[2] BlueScope later contradicts itself asserting "Commerce did not need to determine whether a 'lowered' invoice price to the importer could constitute reimbursement under its regulation, because there was no evidence in the record that AIS's invoice price to BSA had been lowered."  BlueScope at 26.

grapple with the disparity in BlueScope's reporting, accepting at face value that "the transfer price from AIS to BSA excludes those duties." Commerce Br. at 17.

BlueScope attempts to confuse the issue by conflating transfer price with entered value. BlueScope Br. at 23 ("AIS set its transfer price to BSA in accordance with Customs' requirements for determining 'entered value'"). Even Commerce conceded that "it may be true that BlueScope could have chosen to reflect those duties explicitly on an invoice to BSA — only to have BSA deduct them as non-dutiable expenses and then turn around and pay the duties." Commerce Br. at 23.

BlueScope chose to reimburse its importer for antidumping duties by deducting duties from what otherwise would have been a duty-inclusive transfer price. As a result, the producer was not compensated for the full DDP price of the hot-rolled steel. Meaning, it was the *producer* that bore the expense of the duties, thereby reimbursing the *importer*. *See Apex Exps. v. United States*, 777 F.3d 1373, 1381 (Fed. Cir. 2015) ("Where the antidumping duty is paid by the exporter, the importer acquires merchandise in the U.S. at less than a fair price, thus frustrating the purposes of the antidumping law. By assuming the cost of the antidumping duties . . . the exporter effectively reduces the U.S. price."); *id*. ("The {reimbursement} regulation creates an added disincentive for the exporter. If the

NONCONFIDENTIAL VERSION

exporter pays or reimburses for antidumping duties, Commerce will basically double count the antidumping margin.").

3.    Payment of Duties Is a Distraction from BlueScope's Reimbursement

Commerce and BlueScope assert that Customs' collection of antidumping duties and BlueScope's downstream price to its affiliated customer are relevant to whether BlueScope's Australian producer reimbursed its affiliated importer. Commerce Br. at 12 ("BlueScope provided evidence demonstrating that the United States importer *actually did* pay the applicable duties and passed that cost on to its affiliated customer."); *id*. at 20 ("BSA actually paid applicable duties and passed them on to Steelscape"); BlueScope Br. at 9 ("BSA paid the requisite amount of antidumping duties").

Duties must be remitted to Customs for merchandise to enter the United States.  If the importer did not pay those duties, the merchandise would not have entered the United States, and there would be nothing for the producer or exporter to reimburse.  Payment of duties is irrelevant to whether reimbursement occurs.

Similarly, the ultimate price charged to the downstream unaffiliated customer is irrelevant to whether reimbursement occurs.  Reimbursement under 19 CFR § 351.402(f)(1)(i)(B) relates to whether the foreign producer/exporter reimbursed the importer's payment of antidumping duties and not whether the unaffiliated party is invoiced a price that is inclusive of duties.  Indeed,

NONCONFIDENTIAL VERSION

Commerce's regulation does not address the final unaffiliated price. The price to the customer is not a consideration under Commerce's rule. Indeed, a customer may pay a duty-inclusive price to the importer and yet reimbursement may still occur because the importer paid a lower price to the producer. That is what happened here.

Commerce and BlueScope further assert that non-reimbursement certificates are "important documents" in considering a reimbursement allegation. BlueScope Br. at 15. *See* Commerce Br. at 16. However, Commerce has already addressed and rejected this argument stating, "the language of the certification requirement does not exclude indirect reimbursements of the importer by the exporter or producer." *Porcelain-on-Steel Cookware from Mexico*, 65 Fed. Reg. 30,068 (May 10, 2000), IDM at Comment 1. Indeed, Commerce undermines its own position, conceding that while "{i}mporters must certify that they did not receive reimbursement for antidumping duties, regardless of the affiliation status of the importer. . . Commerce can nevertheless conclude, based on record evidence, that reimbursement occurred." Commerce Br. at 24 (internal citations omitted).

**B.    Commerce and BlueScope Misconstrue the Reimbursement Regulation and Related Precedent in an Attempt to Justify Commerce's Failure to Apply its Reimbursement Regulation to the Record Evidence**

    1.    The Policies Commerce and BlueScope Advance For the First Time on Appeal are Flawed and Find No Basis in the Regulation or Prior Precedent

BlueScope makes the broad claim that "the reimbursement rules do not apply in that situation in which the respondent is acting as both exporter and importer." BlueScope Br. at 27. Commerce makes a slightly more tailored claim that "Commerce's practice is to require 'direct evidence' of reimbursement in the case of affiliated entities." Commerce Br. at 13.

As an initial matter, Commerce did not express either of these positions in its decision. Conversely, quoting *CTVs from Korea*, Commerce stated "reimbursement, within the meaning of the regulation, takes place between affiliated parties if the evidence demonstrates that the exporter directly pays antidumping duties for the affiliated importer or reimburses the importer for such duties." Commerce Issues and Decision Memorandum ("IDM") at 9, Appx0027. A new policy advanced by Commerce for the first time on appeal is merely a convenient litigation strategy that is not owed deference. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); *Abbott Labs. v. United States*, 573 F.3d 1327, 1332–33 (Fed. Cir.

2009) ("{W}e owe deference only to those considered agency judgments as to the issue directly involved in the litigation, not to the views of litigation counsel.").

Moreover, Commerce and BlueScope's creative new policy is at odds with the plain language of the reimbursement regulation. The regulation clearly anticipates reimbursement between affiliated parties given its applicability to "the constructed export price," which presumes the first sale in the United States is to an affiliated party. 19 CFR § 351.402(f)(1)(i). Further, the regulation broadly addresses duties "reimbursed to the importer." *Id*. The regulation is not limited to direct reimbursement.

Offering another *post hoc* regulatory interpretation, Commerce incorrectly asserts that transfer pricing can never demonstrate reimbursement. Commerce Br. at 25 ("Commerce does not recognize internal pricing arrangement between affiliates to be evidence of reimbursement").[3] This position must fail for a number of reasons.

*First*, the Trade Court has upheld Commerce's refusal to adjust for reimbursement based on a general allegation of "a foreign manufacturer sell{ing} merchandise to a related U.S. importer at price below cost." *Torrington Co. v.*

---

[3] BlueScope offers the opposite position, that "Commerce and the Trade Court, however, did not conclude that the regulation prohibits Commerce from ever finding reimbursement based on a lowered invoice price." BlueScope Br. at 25.

NONCONFIDENTIAL VERSION

*United States*, 881 F. Supp. 622, 629 (Ct. Int'l Trade 1995).  That is not the case at bar.  U. S. Steel has not alleged reimbursement based on below cost sales.

*Second*, while we agree with Commerce that "*Antifriction Bearings* is factually distinguishable" (Commerce Br. at 27) because the allegation at issue here is not based on a below cost transfer price, the regulatory guidelines Commerce established in its decision remain relevant.  Namely, "*examples* {were} given by Commerce of circumstances that could constitute reimbursement between affiliated parties 'if evidence demonstrates' as much: '(*e.g.*, the exporter directly paid the duties for the importer or the exporter lowered the amount invoiced to the importer).'"  Commerce Br. at 28 (emphasis in the original).  U. S. Steel's allegation is based on the explicit link between the amount the transfer price was lowered and the estimated antidumping duties owed to Customs — *i.e.*, the second example of reimbursement provided by Commerce, as cited above.

BlueScope similarly places an inordinate amount of weight on the fact that reimbursement was conferred though the transfer price.  *See* BlueScope Br. at 30. Reimbursement that is accomplished by means of the transfer price is equally as unlawful as if BlueScope had simply paid its importer for the duties after entry. Indeed, Commerce recognized as such by broadly defining what constitutes reimbursement.  19 CFR § 351.402(f)(1)(i)(B).

12

NONCONFIDENTIAL VERSION

Commerce attempts to undermine U. S. Steel's position as hypocritical stating that "it is telling that U. S. Steel, on one hand, distinguishes the trial court's decision in *Torrington* because '{a}t no time has U. S. Steel alleged reimbursement because of below cost transfer pricing' (App. Br. at 20), yet insists that an agency determination from *another segment of the same proceeding* and involving the very same allegation – a below cost transfer – is binding practice." Commerce Br. at 28 (emphasis in the original).

U. S. Steel does not dispute the factual underpinning of those cases, that allegations based solely on below cost transfer prices do not rise to the level of reimbursement.  The legal import of those cases should be faithfully applied to this case.  Specifically, an allegation must demonstrate a link between the antidumping duties and the transfer price, such as the producer lowering the invoice price to its affiliated importer for antidumping duties, to constitute reimbursement between affiliated parties.  That precedent, when applied to the factual record of the underlying review, should result in a reimbursement finding.

Rather than concede the plain meaning of that precedent, Commerce has attempted to distract the Court with several alternative regulatory interpretations that find no basis in Commerce practice and are in fact, internally inconsistent.  For example, immediately after claiming that Commerce "does not recognize internal pricing arrangement between affiliates to be evidence of reimbursement"

(Commerce Br. at 25) Commerce admits "that there may be circumstances where an invoice price indicates reimbursement." Commerce Br. at 28. Of course, an "invoice price" between affiliates would be based on the "internal pricing arrangement between affiliates." Commerce also undermines its own position first stating that "Commerce's practice is to require 'direct evidence' of reimbursement in the case of affiliated entities," Commerce Br. at 13, but then noting that in *Antifriction Bearings* "{t}he respondents argued that Commerce should instead apply the regulation only where there is direct evidence of reimbursement, given the inherently intermingled nature of affiliated parties. *Commerce declined to adopt {respondents'} proposed approach.*" Commerce Br. at 27 (internal citations omitted) (emphasis added).

> 2. Tellingly, Neither Commerce nor BlueScope Can Identify Commerce's Reversal of its Interpretation of the Reimbursement Regulation

Commerce claims that there is not enough precedent supporting U. S. Steel's reimbursement allegation to warrant an affirmative finding. Commerce Br. at 26-27. Commerce cites the Trade Court's opinion in *Shandong Huarong Mach. Co. v. United States* to support its position. However, Commerce conveniently overlooks the context for the Trade Court's finding that "two prior determinations are not enough to constitute agency practice that is binding on Commerce" — namely, that conflicting precedent existed that was more akin to the facts of that record.

*Shandong Huarong Mach. Co. v. United States*, 435 F. Supp. 2d 1261, 1293 (Ct. Int'l Trade 2006) ("the court finds that Commerce correctly determined that the situation presented here is distinct from that in those past investigations.").  Indeed, *Shandong Huarong* is complementary to U. S. Steel's position, not adverse.

Commerce goes on to note that "Agencies are, of course, always 'free to change their existing policies as long as they provide a reasoned explanation for the change.' *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). U. S. Steel, however, offers no evidence of a contrary existing policy."  Commerce Br. at 26 n.5.  U. S. Steel need not offer contrary policy because Commerce's policy supports the application of its reimbursement regulation to this record, as discussed *supra*.  Commerce fails to cite any precedent indicating that it no longer considers the exporter lowering the amount invoiced to the importer by antidumping as an example of reimbursement that satisfies the *Torrington* requirement that there be a link between the transfer price and antidumping duties.[4]  In fact, Commerce does the opposite, reinforcing the applicability of its reimbursement practice.

---

[4] BlueScope cites *Large Diameter Welded Pipe from Canada* and *Frozen Warmwater Shrimp from India* to support its assertion that "Commerce has determined that the reimbursement rules do not apply in that situation in which the respondent is acting as both exporter and importer." BlueScope Br. at 27-28.  This is correct.  In both cases cited by BlueScope the producer acted as the importer.  There was no affiliated importer, there was no transfer price.  Commerce concluded that when respondents are themselves paying duties as the importer, it is not considered reimbursement.  *See Large Diameter Welded Pipe from Canada:*

*(footnote continued on next page)*

NONCONFIDENTIAL VERSION

As this Court has articulated, "Commerce, like any agency, is due deference from the courts in certain matters entrusted to it by Congress. Once Commerce establishes a course of action, however, Commerce is obliged to follow it until Commerce provides a sufficient, reasoned analysis explaining why a change is necessary." *NMB Sing. Ltd v. United States*, 557 F.3d 1316, 1328 (Fed. Cir. 2009) (internal citations omitted). In reversing Commerce and the Trade Court, this Court was not deterred by the absence of voluminous cases supporting plaintiff's position because "those that do" indicated Commerce had an established course of action that was not followed and "no party cites any case in which Commerce has rejected the idea." *Id*. at 1328-29.

Accordingly, Commerce established a "course of action" through its *Antifriction Bearings* precedent of addressing reimbursement between affiliated parties if there is evidence that the producer or exporter lowered the amount invoiced to its importer by antidumping duties, demonstrating the requisite "link." As such, Commerce was obligated to consistently apply its practice to the facts of

---

*Preliminary Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2020*, 87 Fed. Reg. 6,497 (Feb. 4, 2022), IDM at 22; *Certain Frozen Warmwater Shrimp from India: Final Results of Antidumping Duty Administrative Review and Final No Shipment Determination*, 77 Fed. Reg. 40,848 (July 11, 2012), IDM at Comment 5. BlueScope's reliance on the *Apex Exps. v. United States* fact pattern is similarly misplaced as it concerns an exporter that was also the importer, a distinct affiliated importer was not used. BlueScope Br. at 30.

NONCONFIDENTIAL VERSION

the underlying record — showing BlueScope lowered the amount invoiced to its affiliated importer by antidumping duties.  Doing so compels a finding of reimbursement.

## II.  CONCLUSION

Nothing proffered by Appellees overcomes the arguments advanced in U. S. Steel's Opening Brief.  Accordingly, for the reasons discussed above, U. S. Steel respectfully requests that this Court vacate the CIT's opinion in *United States Steel Corporation v. US*, hold that Commerce's *Final Results* failing to correct its antidumping calculation for reimbursement of antidumping duties between the foreign producer and importer was unsupported by substantial evidence and contrary to law, and remand for reconsideration consistent with the Court's opinion.

Respectfully submitted,

/s/ Sarah E. Shulman

Thomas M. Beline
Yohai Baisburd
Sarah E. Shulman
CASSIDY LEVY KENT (USA) LLP
*Counsel for United States Steel Corporation*

February 17, 2023

**FORM 31. Certificate of Confidential Material**

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2022-2078

**Short Case Caption:** United States Steel Corporation v. US

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains <u>46</u> number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☑ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 02/17/2023

Signature: /s/ Sarah E. Shulman

Name: Sarah E. Shulman

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2022-2078

**Short Case Caption:** United States Steel Corporation v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 4,036 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 02/17/2023

Signature: /s/ Sarah E. Shulman

Name: Sarah E. Shulman

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2022-2078

**Short Case Caption** United States Steel Corporation v. US

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 02/17/2023

by ☐ U.S. Mail ☐ Hand Delivery ☑ Email ☐ Facsimile
☐ Other: _____

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Daniel L. Porter,<br>BlueScope Steel (AIS) PTY LTD., BlueScope Steel LTD, BlueScope Steel Americas, INC. | Email via court's electronic filing system |
| Kelly A. Krystyniak,<br>United States | Email via court's electronic filing system |
| | |
| | |
| | |

☐ Additional pages attached.

Date: 02/17/2023

Signature: /s/ Sarah E. Shulman

Name: Sarah E. Shulman